UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| XIHAI WANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-01543-TAB-RLY |
| | ) |
| CITY OF INDIANAPOLIS, | ) |
| GRADDIS CODY Police Officer, | ) |
| REED DANIEL Police Officer, | ) |
| BAUMER STEVEN Police Officer, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

**I.     Introduction**

Defendants City of Indianapolis, Officer Cody Graddis, Officer Daniel Reed, and Officer Steven Baumer move the Court to dismiss Plaintiff Xihai Wang's complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Filing No. 19.] Defendants argue that Plaintiff's complaint: is barred by the *Rooker-Feldman* doctrine; is barred by relevant statutes of limitations; fails to comply with provisions of the Indiana Tort Claims Act; fails to assert a *Monell* claim; and fails to state a claim for malicious prosecution. [Filing No. 20.] Plaintiff opposes the motion. [Filing No. 23.] The Court agrees that Plaintiff's complaint suffers from a myriad of problems and, as specifically set forth below, raises claims that are time-barred or precluded by the *Rooker-Feldman* doctrine. Accordingly, Defendants' motion to dismiss is granted.

**II.     Background**

Plaintiff's complaint relates to his arrest and prosecution in Indiana state court.  Because Defendants have raised a facial challenge to subject matter jurisdiction under Rule 12(b)(1) and moved for dismissal under Rule 12(b)(6), the Court accepts the facts alleged by Plaintiff in the complaint as true and draws all reasonable inferences in his favor.  *See, e.g., Scott Air Force Base Properties, LLC v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 519 (7th Cir. 2008).  "The Court construes *pro se* complaints liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers."[1]  *Williford v. Amazon Fulfillment*, No. 1:18-cv-1679-JMS-DML, 2018 WL 5924000, at *1 (S.D. Ind. Nov. 13, 2018) (*citing Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027-28 (7th Cir. 2013)).  Even so, Plaintiff's factual allegations are, at times, unclear.  His complaint contains typos and at times is difficult to comprehend.  [Filing No. 1.] Defendants' filings and state-court records provide additional relevant facts, which are not contested by Plaintiff or inconsistent with his allegations.  [Filing No. 20-2 (Chronological Case Summary for *State of Indiana v. Xihaj Wang*, Case No. 49D23-2012-CM-038128).]  Therefore, the Court takes judicial notice of the facts related to the state court proceedings.  *See, e.g., Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion not dismiss.").

These facts establish the following.  On December 22, 2020, Plaintiff's roommates pushed and aggressively threw him out of his residence.  [Filing No. 1, at ECF p. 4.]  About 10 minutes later, three police officers arrived.  Plaintiff does not identify the officers.  [Filing No. 1,

---

[1] At the time the parties briefed the motion to dismiss, Plaintiff was proceeding *pro se*.  He is now represented by counsel [Filing No. 34], but his counsel did not seek to supplement the motion to dismiss briefing.  However, as noted below, the Court ordered additional briefing, which Plaintiff's counsel submitted.

2

at EF p. 4.] Two of the officers engaged in a "friendly conversation" with Plaintiff's roommates inside the residence while Plaintiff remained outside with the third officer.  After an indeterminate amount of time, the officers exited the residence and arrested Plaintiff.  [Filing No. 1, at ECF p. 4.]  The officers took Plaintiff to jail, collected his fingerprints, conducted a body search, and confiscated his possessions.

The state of Indiana found probable cause and charged Plaintiff with battery resulting in bodily injury.  [Filing No. 1, at ECF p. 5.]  On December 26, 2020, the state court ordered Plaintiff released from jail subject to a no-contact order.  [Filing No. 1, at ECF p. 5; Filing No. 20-4.]  On December 29, 2020, Plaintiff was released from custody following his arraignment. The no-contact order in place at that time prevented Plaintiff from visiting any location where his roommates were located and prohibited him from possessing any firearms.  He also had to wear a GPS ankle monitor.  [Filing No. 1, at ECF p. 5.]

On October 21, 2021, the prosecutor offered Plaintiff a diversion program instead of a trial, which he rejected immediately.  [Filing No. 1, at ECF p. 7.]  Because Plaintiff did not trust his attorney, he terminated his first counsel and hired a second attorney to proceed to trial.  On May 26, 2022, despite Plaintiff requesting his attorney not consider any further offers from the prosecutor, Plaintiff entered into a pretrial diversion agreement to withhold prosecution on the related charges.  [Filing No. 1, at ECF p. 7.]  Under the pretrial diversion agreement, the state of Indiana agreed to withhold prosecution for one year if Plaintiff complied with a variety of conditions, including avoiding contact with his former roommate.  To enter into the agreement, Plaintiff had to admit that there was probable cause for his arrest and for the charges filed against him.  *See* Agreement to Withhold Prosecution, *State v. Wang*, Cause No. 49D23-2012-CM-038128 (Mar. Sup. Ct. May 26, 2022).  Subsequently, Plaintiff terminated his second attorney

3

and hired a third lawyer to attempt to have the agreement rescinded by the state court. [Filing No. 1, at ECF p. 7.]

However, on December 1, 2022, prior to the conclusion of the diversion period and before Plaintiff could comply with all conditions of the agreement, the state dismissed all charges against Plaintiff. [Filing No. 1, at ECF p. 7.] On January 6, 2023, Plaintiff filed a tort claim notice with Defendant City of Indianapolis. [Filing No. 1, at ECF p. 9.] The City denied Plaintiff's claim on May 9, 2023, for failure to timely file the notice of tort claim. [Filing No. 1, at ECF p. 9.] Following the denial, on August 28, 2023, Plaintiff filed the instant complaint, alleging violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988; false arrest and imprisonment; *Monell* liability; invasion of privacy; violations of the Second, Fourth, and Fourteenth Amendments; and intentional infliction of emotional distress. [Filing No. 1.] On October 30, 2023, Defendants moved to dismiss Plaintiff's complaint.[2] [Filing No. 19.]

**III.   Discussion**

As noted above, Defendants moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Filing No. 19.] Plaintiff's complaint is a confusing collection of allegations and references to federal and Indiana state statutes and constitutional provisions. However, it is apparent from his complaint that any claims against Defendants are predicated on Plaintiff's arrest, detention, and prosecution in state court.

---

[2] Plaintiff also filed a surreply [Filing No. 28], which Defendants have moved to strike [Filing No. 29], because Plaintiff did not seek leave from the Court before filing it. While the Court agrees that Plaintiff's surreply is improper, there is no need to strike it since it does not contain any new, relevant information or argument that the Court relies on with this ruling. Accordingly, Defendants' motion to strike [Filing No. 29] is denied.

Defendants argue that the *Rooker-Feldman* doctrine bars the Court from exercising jurisdiction over many of Plaintiff's claims, and that the rest are time-barred or suffer other fatal problems.

### A. Lack of Subject Matter Jurisdiction Under *Rooker-Feldman* Doctrine

Defendants argue that Plaintiff's complaint improperly attempts to challenge a state court order in a federal district court, which violates the *Rooker-Feldman* doctrine.

> The *Rooker-Feldman* doctrine is a creature of two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It is a principle of jurisdiction that precludes the lower federal courts from applying appellate review to state court decisions.

*Fliss v. Generation Cap. I, LLC*, 87 F.4th 348, 353 (7th Cir. 2023). The *Rooker-Feldman* doctrine involves a two-step analysis. First, it is "is limited to federal claims that directly challenge a state court judgment or are inextricably intertwined with one." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (internal citations and quotation marks omitted). *See also Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) ("*Rooker-Feldman* is confined, however, to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (Internal citation and quotation marks omitted)). Second, the court must "determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021).

Here, many of Plaintiff's claims challenge the constitutionality of the no-contact order entered against Plaintiff in the state court case on December 26, 2020. In Counts II and III, Plaintiff specifically alleges that the no-contact order prevented him from returning to his home and caused him personal property losses. Plaintiff claims that because of the no-contact order, he became homeless, as he was unable to return to his residence where his roommates resided,

5

which resulted in unconstitutional deprivation of his home. Plaintiff further claims Defendants unconstitutionally deprived him of his personal property, because the no-contact order meant he had to hire an individual to return his personal vehicle located at the residence. [Filing No. 1, at ECF p. 13-15.]

On March 28, 2024, the Court entered an interim order directing the parties to provide additional briefing related to the underlying state criminal case and considering the impact, if any, the procedural posture of the state court proceedings has on the *Rooker-Feldman* analysis. [Filing No. 36.] Specifically, the Court directed the parties to consider this matter in the context of a decision from this district that neither side had previously addressed, *Owens v. Downey*, No. 1:15-cv-00776-JMS-DML, 2017 WL 4868197 (S.D. Ind. May 26, 2017). In *Owens*, this Court held that the *Rooker-Feldman* doctrine did not apply to the plaintiff's claims because he was acquitted of all charges and the protective orders were rescinded following his acquittal. *Id.* at *10-12. As noted above, the parties in the present case clarified that the state court criminal charges against Plaintiff were not dismissed due to successful completion of the pretrial diversion agreement. Rather, the charges were dismissed because the State declined to prosecute. Motion to Dismiss, *State v. Wang*, Cause No. 49D23-2012-CM-038128 (Mar. Sup. Ct. Dec. 1, 2022).

Plaintiff, citing *Owens*, argues that he was not a state-court loser, as the criminal case was dismissed. [Filing No. 37, at ECF p. 2.] However, Defendants attempt to distinguish *Owens* from the present matter, noting that in this case, Plaintiff could not comply with conditions precedent to the pretrial diversion agreement because the State filed a motion to dismiss the case prior to the conclusion of the diversion period and before Plaintiff could comply with all the conditions of the agreement. [Filing No. 38, at ECF p. 2-3.] Defendants note that since *Owens*,

6

the Seventh Circuit has further considered the impact of procedural state court rulings, interlocutory orders, and diversion agreements in this area. [Filing No. 38, at ECF p. 4.] Defendants rely on *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 392 (7th Cir. 2019), in which the Seventh Circuit recognized that the plaintiffs did not directly challenge any of the state court orders in federal court, but the plaintiffs § 1983 claims were inextricably intertwined with the state court orders to warrant *Rooker-Feldman* analysis.

Plaintiff's allegations demonstrate that his injuries resulted from, or at minimum were inextricably intertwined with, the state court order. *See Swartz, id*. *See also McGoffney v. Kincaid*, No. 22-3047, 2024 WL 50465, at *2 (7th Cir. Jan. 4, 2024), ("Although McGoffney correctly asserts that the *Rooker-Feldman* doctrine does not apply when a plaintiff challenges independently unlawful conduct, she does not raise that type of challenge. She points to nothing other than judicial rulings as the wrongs against her. The *Rooker-Feldman* doctrine blocks such challenges, even if they are constitutional in nature."). For the Court to find Plaintiff was wrongfully deprived of his property, "the federal court would have to find that [the state court no-contact order was] entered in error, either procedurally or substantively." *Huggins v. ABK Tracking, Inc*., No. 3:22-cv-00135-MPB-MJD, _ F. Supp. 3d. _, 2023 WL 7396025, at *10 (June 9, 2023), *reconsideration denied*, 2023 WL 7395577 (S.D. Ind. Oct. 27, 2023).

In addition, contrary to Plaintiff's arguments, Plaintiff had a reasonable opportunity to litigate the issues of his constitutional injuries and address the injuries in the state court criminal case proceedings, including the existence of probable cause. *See, e.g., Huggins,* No. 3:22-cv-00135-MPB-MJD, 2023 WL 7396025, at *13-14 (setting forth state court obligations to advise a defendant on conditions of bail and opportunities for challenges post-conviction). This opportunity is evident because Plaintiff sought, and received, a modification of other conditions

7

of his pretrial release during the state court criminal proceedings. *See* Record and Motion for Modification of Conditions of Pretrial Release, State v. Wang, Cause No. 49D23-2012-CM-038128 (Mar. Sup. Ct. Aug. 12, 2021) (seeking removal of a GPS monitor). Despite requesting modification of other pretrial release conditions, Plaintiff did not challenge or seek to modify the no-contact order he now alleges deprived him of his property.

Nor did Plaintiff raise any concerns regarding the existence of probable cause. On the contrary, to enter into the pretrial diversion agreement, Plaintiff had to admit that there was probable cause for his arrest and for the charges filed against him. *See* Agreement to Withhold Prosecution, *State v. Wang*, Cause No. 49D23-2012-CM-038128 (Mar. Sup. Ct. May 26, 2022). At no time during the state court proceedings did Plaintiff attempt to challenge the state court's finding of probable cause. On June 10, 2022, Plaintiff submitted a letter to the state court judge seeking to withdraw to diversion agreement due to disagreements with his counsel. Motion to Withdraw the Agreement to Withhold Prosecution and Reopen for Trial, State v. Wang, Cause No. 49D23-2012-CM-038128 (Mar. Sup. Ct. 2022). However, Plaintiff's letter did not address any specific provisions of the diversion agreement he sought to challenge, including his agreement that probable cause existed for his arrest. Thus, despite having reasonable opportunities to challenge the state court order, Plaintiff failed to do so. Therefore, the *Rooker-Feldman* doctrine bars Counts II and III, and this Court lacks subject matter jurisdiction over these claims.

Additional claims suffer the same fate. For instance, in Count XV, Plaintiff alleges that he was "ordered to have no firearms, deadly weapons, or ammunition in his possession" on December 26, 2020. [Filing No. 1, at ECF p. 25.] The order referenced by Plaintiff is the December 26, 2020, state court no-contact order. Accordingly, Plaintiff's alleged injury—

8

deprivation of his Second Amendment rights—once again was the result of the state court order. This is another improper attempt to challenge a state court order in violation of the *Rooker-Feldman* doctrine.  In Count IX, Plaintiff claims Defendants violated the Commerce Clause, Article IV, and the Fourteenth Amendment by restricting his right to travel through the no-contact order. [Filing No. 1, at ECF p. 20.] In Count XI, Plaintiff alleges § 1983 Fourth and Fourteenth Amendment violations resulting from being required to wear a GPS monitoring device. And in Count XII, Plaintiff alleges that Defendants violated the Fourteenth Amendment by restraining his movements through the no-contact order. [Filing No. 1, at ECF p. 23.] These claims all relate to the no-contact order and would once again require this Court to find error with a state court ruling.

Thus, the *Rooker-Feldman* doctrine precludes this Court from reviewing these challenges to a state court order. *See also Braun v. City of McHenry*, No. 21 C 50003, 2022 WL 523127, at *3 (N.D. Ill. Feb. 22, 2022) ("The *Rooker-Feldman* doctrine provides a federal district court lacks subject matter jurisdiction to review a final state court judgment including an order of protection."). "When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question; the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004). *See also Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017) ("Because we conclude that Jakupovic's claims are jurisdictionally barred under *Rooker-Feldman*, the complaint should be dismissed without prejudice."). Therefore, Counts II, III, IX, XI, XII, and XV are dismissed for lack of subject matter jurisdiction.

9

B.     **Time-Barred Claims**

Next, Defendants argue that several claims should be dismissed because they are time-barred under the applicable statute of limitations. In Counts I and IV, Plaintiff alleges § 1983 claims under the Fourth Amendment related to his arrest and detention in the state court case. Specifically, Plaintiff alleges that Defendants made a false probable cause affidavit and unreasonably detained and arrested him in violation of his Fourth Amendment rights. The statute of limitations for § 1983 cases is governed by the state law limitations period in personal injury actions. *See, e.g., Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011) ("Federal law does not set the limitations period in § 1983 actions. Instead, 42 U.S.C. § 1988(a) instructs us to look to state law. Specifically, we look to the limitations period for personal injury actions."). In Indiana, the personal injury statute of limitations is two years. Ind. Code § 34-11-2-4. A § 1983 claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019), *as amended on denial of reh'g* (Apr. 17, 2019) (internal citation and quotation marks omitted).

The accrual standards for false arrest and false imprisonment are similar. *See, e.g., Bentz v. City of Kendallville*, 577 F.3d 776, 779-80 (7th Cir. 2009). "A claim for false arrest or false imprisonment accrues once the plaintiff is detained (or released) as a result of a lawful process." *Regains*, 918 F.3d at 533. Plaintiff alleges he was bound over to the state court on December 26, 2020, based on a false probable cause affidavit, and released from detention on December 29, 2020. [Filing No. 1, at ECF p. 4-5, 12,21.] Thus, the latest date Plaintiff's false arrest or imprisonment claims could accrue would be his release date—December 29, 2020. Accordingly, Plaintiff needed to bring related claims within two years of that date, or by December 29, 2022.

He failed to do so.  Therefore, Counts I and IV are dismissed as untimely under Fed. R. Civ. P. 12(b)(6).

In Count VIII, Plaintiff attempts to raise state law tort claims for false arrest and false imprisonment, labeling this count: "False Arrest, Imprisonment, Charges in Violation of the Indiana Constitution and Indiana Common Law." [Filing No. 1, at ECF p. 19.]  Applying the same analysis to the state law claims as for the claims under § 1983, the latest Plaintiff could have brought either a state law false arrest or false imprisonment was December 29, 2022. Plaintiff failed to file the instant matter until nearly six months past this deadline. Therefore, Count VIII is also dismissed.[3]

Counts VI and X allege claims under §§ 1985 and 1986 for civil conspiracy.  Section 1985 claims are governed by the same state law limitations period for personal injury actions as § 1983 claims.  *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1994) ("The same statute of limitations applies to claims under § 1983 and § 1985(3).").  In addition, the statute of limitations for § 1986 cases is one year.  *See* 42 U.S.C. § 1986 (stating that "no action under the provision of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").  As with other civil conspiracy claims, the claim accrues when a plaintiff knows

---

[3] Although the Court need not address Counts III, IX, XI, and XII further, as it has already found they are barred under the *Rooker-Feldman* doctrine, the Court briefly notes that these counts are also time-barred.  For instance, in Count III, Plaintiff alleges Fourth and Fourteenth Amendment violations under § 1983, claiming that he was deprived of his personal property based upon a false probable cause affidavit that resulted in the no-contact order.  The Seventh Circuit has held that when such claims are based on out-of-court events such as gathering evidence to support a probable cause affidavit, these claims accrue as soon as the alleged constitutional violation occurs.  *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014).  Here, Plaintiff claims the probable cause affidavit was based upon false statements made during witness interviews of his roommates on December 22, 2020.  Because Plaintiff alleges that Defendants' out-of-court actions led to his deprivation, the accrual of his related § 1983 claim occurred on the date the alleged violation occurred: December 22, 2020.  Thus, Plaintiff had two years, or until December 22, 2022, to bring such claims, and failed to do so before they became time barred.

or has reason to know his injury has occurred. *Giesen*, 956 F.2d at 740. In this case, the injury is an alleged civil rights violation. Once again, the accrual date is either Plaintiff's date of arrest (December 22, 2020) or the time of his arraignment (December 26, 2020). Either way, Plaintiff failed to assert a § 1986 claim within a year, and he failed to assert his § 1985 claim within two years. Therefore, Counts VI and X are dismissed.

In Count XIII, Plaintiff states that he was subject to a strip search during the seven-day period he was jailed, which he alleges constituted an invasion of privacy. [Filing No. 1, at ECF p. 23.] Plaintiff knew, or had reason to know, that his alleged injury resulted from the strip search occurring during his time while processed into jail. Therefore, Plaintiff's claim accrued on December 22, 2020, at the time he was processed following his arrest, and the statute of limitations ran until two years later, on December 22, 2022. Therefore, Counts XII is also dismissed.

Defendants next argue that Count VII, alleging malicious prosecution in violation of the Fourth Amendment under § 1983, is likewise time-barred. In Count VII, Plaintiff claims his Fourth Amendment rights were violated because he was prosecuted without probable cause based upon false affidavits. [Filing No. 1, at ECF p. 18.] Defendants cite *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018), in which the Seventh Circuit held that the date *detention* ends, rather than the date criminal proceedings terminate, is the proper measure for determining when a Fourth Amendment claim has accrued. However, in 2019, the Supreme Court expressly held that the statute of limitations for a § 1983 fabricated evidence claim began to run when the criminal proceedings ended without a conviction. *See McDonough v. Smith*, 139 S. Ct. 2149, 2161, 204 L. Ed. 2d 506 (2019) ("The statute of limitations for McDonough's § 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal

proceedings against him terminated in his favor—that is, when he was acquitted at the end of his second trial."). *See also Thompson v. Clark*, 596 U.S. 36, 49, 142 S. Ct. 1332, 1341, 212 L. Ed. 2d 382 (2022) ("Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

The Seventh Circuit has not explicitly overruled *Manuel* in the context of these Supreme Court decisions, and Plaintiff, proceeding *pro se* at the time the parties briefed this motion, did not cite these specific decisions in arguing that the motion to dismiss should be denied. However, Plaintiff cites to *Heck v. Humphrey*, 512 U.S. 477, 489, 114 S. Ct. 2364, 129 L. 3d. 2d 383 (1994), where the Supreme Court held that a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor. Moreover, district court decisions align with *McDonough* in somewhat similar scenarios. *See, e.g., Savory v. Cannon*, 532 F. Supp. 3d 628, 636 (N.D. Ill. 2021) ("As noted, *McDonough* makes clear that a plaintiff must wait until the favorable termination of the criminal proceedings to bring a § 1983 claim that, if successful, would be incompatible with his guilt."); *Weston v. City of Chicago*, No. 20-cv-6189, 2024 WL 168104, at *3 (N.D. Ill. Jan. 16, 2024) ("A section 1983 action based on an unconstitutional conviction does not accrue until the conviction has been invalidated just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated."). A district court in South Carolina concluded that these more recent Supreme Court decisions superseded *Manuel*. *See Taylor v. Himes*, C/A No. 1:21-4036-MGL-PJG, 2022 WL 4001185, at *2 n.3 (D.S.C. June 13, 2022), *report and recommendation adopted*, 2022 WL 4000843 (D.S.C. Sept. 1, 2022) ("The defendant's reliance on *Manuel v. Joliet*, 903 F.3d 667,

13

669 (7th Cir. 2018), *on remand from* 137 S. Ct. 911 (2017), is unavailing, as that case has apparently been superseded by the United States Supreme Court's decisions expressly holding that Fourth Amendment malicious prosecution claims do not accrue until the prosecution ends without a conviction.").

The state of Indiana dismissed all charges against Plaintiff on December 1, 2022, and Plaintiff initiated this case on August 28, 2023. Thus, because Plaintiff's Fourth Amendment malicious prosecution claim accrued when the prosecution ended without a conviction—in this case, when the charges against Plaintiff were dismissed—Plaintiff timely filed his claim for malicious prosecution.

        **C.**       **Failure to State a Claim for Malicious Prosecution**

Defendants also argue that Count VII should be dismissed because Plaintiff failed to state a claim for malicious prosecution pursuant to § 1983. [Filing No. 20, at ECF p. 24.] As described above, in Count VII, Plaintiff asserts a § 1983 Fourth Amendment claim for malicious prosecution by alleging that the state prosecution was not proper. "To state a claim for malicious prosecution under § 1983, a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir .1996)). *See also Thompson*, 596 U.S. at 44 ("American courts described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii)

the prosecution terminated in the acquittal or discharge of the accused." (Internal citation and quotation marks omitted)).

Indiana recognizes the tort of malicious prosecution. *See, e.g., City of New Haven v. Reichhart*, 748 N.E.2d 374, 378-79 (Ind. 2001). Under Indiana law:

> There are four elements of a malicious prosecution claim: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.

*Ingram v. Diamond Equipment, Inc.*, 118 N.E.3d 1, 7 (Ind. Ct. App. 2018). As noted above, when Plaintiff signed the pretrial diversion agreement, he admitted the state had probable cause for his arrest. "The existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims." *Washington v. City of Chicago*, __ F.4th __, __, 2024 WL 1615022, at *1 (7th Cir. April 15, 2024). *See also Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) ("If there was probable cause to arrest, then all of these claims [for false arrest, false imprisonment, and malicious prosecution] fail as a matter of law."). Thus, Plaintiff's malicious prosecution claim fails as a matter of law because plaintiff admitted to probable cause.

In addition, Plaintiff's state law malicious prosecution action also fails because none of the Defendants are subject to liability for malicious prosecution. The Marion County prosecutor—who is not a defendant in this case—initiated the state prosecution by making an independent determination of whether to pursue criminal charges against Plaintiff. *See, e.g., Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) ("The prosecution was initiated by the prosecutor who made an independent determination of whether to pursue criminal charges

after reviewing all of the information obtained by the Sheriff's Department's independent investigation."). Thus, the first element cannot be met.[4]

Moreover, Defendants have absolute immunity from claims of malicious prosecution under Indiana Code § 34-13-3-3. *See* Ind. Code § 34-13-3-3(6) ("A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he initiation of a judicial or an administrative proceeding."). Defendants include the City of Indianapolis and three police officers; they do not make determinations as to whether to pursue criminal charges and are otherwise immune regarding such determinations. For all these reasons, Plaintiff cannot establish a cause of action for malicious prosecution. Therefore, Count VII is dismissed for failure to state a claim.

**D.** *Monell* **claims and conclusory allegations**

In Counts IV and V, Plaintiff asserts § 1983 *Monell* claims against Defendant City of Indianapolis alleging violations of the Fourth Amendment. The Court already determined that Count IV is time barred. Thus, the focus here is on Count V. Count V alleges that the City failed to train, supervise, or discipline employees and officers regarding separation of witnesses

---

[4] Plaintiff cannot now seek to amend his complaint to add the prosecutor, because any such claim against this new defendant would not relate back to the date of the complaint. *See, e.g., Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021) ("Under Rule 15(c)(1)(C), an amendment to a pleading that changes the party or the naming of the party against whom a claim is asserted relates back to the date of the original pleading so long as: (1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint; (2) within the period provided by Rule 4(m), the party added by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and (3) the added party knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*." (Quotation marks omitted and emphasis added)). Plaintiff's ignorance or failure to name the prosecutor as a defendant before the statute of limitations period expired does not satisfy Rule 15(c)'s mistake requirement. Accordingly, any claim against the prosecutor would be time barred.

16

when conducting investigations, creating fraudulent reports, or processing maliciously. [Filing No. 1, at ECF p. 16-17.]

> To prevail on a *Monell* claim, plaintiffs must identify an action taken by the municipality, the requisite degree of culpability, and a causal link between the municipality's action and the deprivation of federal rights. A municipality "acts" through its written policies, widespread practices or customs, and the acts of a final decisionmaker. A municipality has the requisite degree of culpability if it acts with deliberate indifference to the known or obvious consequences of its action.

*Levy v. Marion Cnty. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019) (internal citations omitted). A failure to train employees may result in municipal liability under § 1983, but only when the municipality's failure to train employees "evidences a deliberate indifference to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal citation and quotation marks omitted). *See also Holloway v. City of Milwaukee*, 43 F.4th 760, 770 (7th Cir. 2022) ("The Supreme Court has recognized that omissions, such as failures to act or to train, may provide a basis for *Monell* liability. But to be liable for its inaction, a municipality must have notice of the risk of a constitutional violation and fail to act even in the face of such notice.").

Plaintiff's conclusory allegations in Count V fall short of this standard. Plaintiff's claims contain nothing but boilerplate language and threadbare recitations of the elements of a *Monell* claim. Plaintiff alleges the City knew that its employees regularly engaged in misdeeds set forth in his complaint, but he fails to describe any such training deficiency for which the City should have notice. Instead, Plaintiff only broadly alleges that the City failed to properly train officers "as to the legal requirements and protections applicable to persons set forth in the: United States and Indiana Constitutions, and other laws." [Filing No. 1, at ECF p. 16.] He does not provide any further reference to any constitutional violations that alleged occurred, nor does Plaintiff allege any facts showing the City's final policymakers were aware of the need for training and

17

deliberately indifference to such obvious need. Rather, Plaintiff merely cites the boilerplate legal elements, and nothing more.[5] Therefore, Count V is dismissed without prejudice for failure to state a claim.

### E. Failure to Comply with the Indiana Tort Claims Act

Finally, Defendants argue that Plaintiff's claim in Count XIV fails to comply with the statutory requirements of the Indiana Tort Claims Act (ITCA).[6] Count XIV alleges a state law claim against all Defendants for intentional infliction of emotional distress. Specifically, Plaintiff claims Defendants "knew or should have known that their negligent conduct in investigating Plaintiff, and pursuing the criminal prosecution of Plaintiff from fabricating evidence, maliciously prosecuting as set forth above, carried an unreasonable risk of causing emotional distress and that such distress might result in illness or bodily harm." [Filing No. 1, at ECF p. 24.]

The ITCA provides that a claim against a political subdivision (such as Defendants) is barred unless the plaintiff first files notice with the entity's governing body within 180 days of the alleged loss. Ind. Code § 34-13-3-8(a). "Compliance with the ITCA's notice requirement is a legal issue for the court to decide." *Neal v. Indianapolis Fire Dep't*, No. 1:20-cv-2921-TWP-MG, 2022 WL 2106143, at *13 (S.D. Ind. June 10, 2022). To determine whether a tort claim notice is timely, the Court must first determine when the Plaintiff's cause of action accrued. "[A]n individual's FTCA claim accrues only when the individual knows (or should have known) of the cause that is in the government's control, not a concurrent but independent cause that

---

[5] For the same reasons, Plaintiff's failure to supervise and failure to discipline claims within the same count also fail.

[6] Defendants also make the same argument as to Count VIII. However, since the Court already determined Count VIII should be dismissed as time-barred, it need not also analyze Defendants' argument that it failed to comply with the ITCA.

would not lead anyone to suspect that the government had been responsible for the injury." *Arroyo v. United States*, 656 F.3d 663, 668 (7th Cir. 2011) (internal citation and quotation marks omitted). Moreover, "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Thus, Plaintiff had 180 days from December 29, 2020, to file his notice of tort claim—until June 25, 2021. However, Plaintiff alleges he filed his notice of tort claim with Defendants on January 6, 2023, which is 740 days after Plaintiff's accrual date. Therefore, Plaintiff's cause of action in Count XIV must be dismissed.

### IV.   Conclusion

Despite liberally construing his pleadings, Plaintiff's complaint fails to state a claim that survives Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). Some of the claims relate to a state court order and are thus barred by the *Rooker-Feldman* doctrine. Several claims are time barred. And the remainder of Plaintiff's claims are either conclusory allegations or otherwise lacking, as described above. For all these reasons, Defendants' motion to dismiss [Filing No. 19] is granted, and Defendants' motion to strike Plaintiff's surreply [Filing No. 29] is denied. The Court will permit Plaintiff to file an amended complaint within 14 days if Plaintiff desires to do so and in good faith believes he can do so in compliance with Fed. R. Civ. P. 11. However, any amended complaint may only seek to revive the *Monell* claims in Count V that were based on conclusory allegations. Claims that are untimely or barred by *Rooker-Feldman* cannot be re-pleaded. Failure to file an amended complaint within 14 days will result in dismissal of this action with prejudice.

Date: 4/23/2024   _____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email